**HINNANT v. PHILIPS**

[184 N.C. App. 241 (2007)]

CHARLES H. HINNANT AND DOROTHY W. HINNANT, PLAINTIFFS v. RICHARD B. PHILIPS AND SHEILA A. PHILIPS, DEFENDANTS, AND PEDRO MARTINEZ ESPINOSA; CECILIA M. RODRIGUEZ; JOHN T. MATTHEWS, TRUSTEE; AND, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., DEFENDANT/INTERVENORS

No. COA06-1308

(Filed 19 June 2007)

**Judgments— docketing—misspelling—standard of care in title searching**

A judgment docketed under the name "Philips" instead of "Phillips" provided sufficient notice, actual or constructive, to create a valid lien on the subject property. If a title examiner exercising the standard of care would have found the judgment, then it sufficiently complies with N.C.G.S. § 1-233.

Judge STEELMAN concurring in the result.

Appeal by defendant-intervenors from order entered 30 May 2006 by Judge Albert A. Corbett, Jr., in Johnston County District Court. Heard in the Court of Appeals 12 April 2007.

*Narron, O'Hale and Whittington, P.A., by James W. Narron, for plaintiffs-appellees.*

*Pendergrass Law Firm, PLLC, by James K. Pendergrass, Jr., and Christopher R. Bullock, for defendant-intervenor appellants.*

LEVINSON, Judge.

Defendant-intervenors, Pedro Espinosa and Cecilia Rodriguez; John Matthews, Trustee; and Mortgage Electronic Registration Systems, Inc. (MERS), appeal from an order granting the motion of plaintiffs Charles and Dorothy Hinnant for execution on a judgment obtained against Richard and Sheila Phillips (defendants). We affirm.

The factual and procedural history of this case began in 1982 when plaintiffs loaned money to defendants, secured by a promissory note executed by the parties. Defendants failed to make the required payments, and plaintiffs filed a complaint to collect the balance of the loan. Their complaint was captioned *Hinnant v. Phillips*, 87 CVD 1689. Plaintiffs obtained a default judgment on 18 March 1988, which

was docketed and indexed with "Richard Barry Phillips and Sheila Ann Phillips" named as defendants.

In July 1988, after the docketing of the judgment in 87 CVD 1689, defendants bought a parcel of land in Johnston County (the subject property). Approximately ten years later, in 1998, plaintiffs filed a complaint to renew their judgment against defendants. The complaint, 98 CVD 272, was again captioned with the parties' names, but the last name "Phillips" was spelled "Philips" with one "L." In February 1998 plaintiffs obtained judgment in their favor; this judgment and the copy docketed by the Clerk of Court also spelled "Phillips" as "Philips."

In 2005 plaintiffs filed a motion in the cause seeking to collect on the judgment through sale of the subject property. However, by 2005 the property had changed hands several times. Defendants had defaulted on their mortgage, and the lender foreclosed on the property; thereafter, it was conveyed to a financial corporation. The subject property was then conveyed to Espinosa, who executed a promissory note in favor of MERS and its trustee, John Matthews.

In May 2006 the trial court allowed appellants to intervene in the case, to protect their rights in the subject property. At the hearing conducted 8 May 2006, appellants argued that the judgment against plaintiffs was not an effective lien as against a *bona fide* purchaser. Appellants asserted that the claimed lien was invalid because it did not appear in the chain of title in a search for "Phillips" with two L's. Plaintiffs presented expert testimony that the standard of care for a title search includes checking for common spelling variants of a name, and that the approved practice is to enter part of a name (in this case, P-H-I-L) in order to catch minor errors or spelling variations. The trial court ruled in favor of plaintiffs, in an order finding in pertinent part that:

1. Plaintiffs recovered a judgment against defendant Phillips (herein 'Defendants') docketed on March 18, 1988 . . . [the "Original Judgment"].

2. Plaintiffs' brought an action to renew that judgment in this file, number 98 CVD 272, and prevailed in that action[.] . . . [T]he Complaint and . . . other pleadings, including the judgment, misspelled the Defendants' surname as "Philips," [not] "Phillips," as in the earlier action.

3. . . . Plaintiffs' judgment against Defendants . . . ["Judgment at Issue"] was indexed in the Clerk of Court's computer system with the spelling, "Philips[,]" . . . [and] docketed and indexed against, "Richard Barry Philips and Sheila Philips," as opposed to, "Richard Barry Phillips and Sheila Phillips," as was the case with the Original Judgment.

4. . . . [In July 1998] Defendants took title to a certain parcel in Johnston County . . . [(the "subject property")]. Such Deed is recorded in . . . the Johnston County Registry and . . . offered into evidence by the Plaintiffs and correctly spelled the [defendants'] name . . . as Richard Barry Phillips and Sheila A. Phillips.

5. On November 30, 2001, Defendants . . . conveyed the Land to a trustee to secure their Note to Lender by Deed of Trust . . . (herein the "Deed of Trust").

6. The Deed of Trust was foreclosed [and] . . . the substitute trustee under the Deed of Trust . . . conveyed the Land to GMAC Mortgage Corporation.

7. . . . [In March] 2005, GMAC . . . conveyed the Land to . . . Pedro [M.] Espinosa and his wife, Cecilia M. Rodriguez, by deed recorded in [the] . . . Johnston County Registry.

8. . . . Espinosa *et ux* conveyed title to the Land . . . to secure a Note for such purchase by Deed of Trust . . . which Note and Deed of Trust are now owned and held by [MERS]. . . . Such Deed of Trust names . . . John T. Matthews, as Trustee.

9. . . . [The] judgment docket index was put on computer in 1989 and the use of the hard copy of the judgment index book was discontinued February 16, 2004.

10. Plaintiffs called as a witness Rhonda Moore, [who] . . . worked in law offices since 1982 and as title [Page] searcher paralegal since 1985[.] . . . The Court qualified her as an expert witness in matters of title examination in eastern North Carolina, without objection.

11. Ms. Moore . . . explained the protocol used in the AOC computers in the Office of the Clerk of the Superior Court of Johnston County, that only the name entered is pulled up for review on the screen. . . . [T]he exact letters typed

in the screen on the computer are the letters in the index which appear. For example, inputting the letters, "P-H-I-L-I-P-S," into the judgment computer would not reveal to the searcher a judgment against a person having the name, "P-H-I-L-L-I-P-S." Ms. Moore's testimony was that she enters the letters "P-H-I-L" when checking judgments for Phillips or Philips because of the prevalence of each spelling. She testified such is her usual and customary practice[.] . . .

12. Ms. Moore offered an opinion . . . [that the] standard of care for a title examination in eastern North Carolina involving a judgment search for Phillips would be made by inputting "P-H-1-L" in the Clerk of Court computer system. . . .

13. The printed computer index for "P-H-I-L-L-I-P-S" is [18] pages [and has] . . . [2] entries for "Rick Phillips," [3] entries for "Richard Phillips" and [3] entries for "Richard Barry Phillips."

. . . .

16. Plaintiffs' expert witness would have conducted her title examination of the judgment index by typing "P-H-I-L" into the judgment index system in the office of the Clerk of the Superior Court.

. . . .

20. The name, "PHILIP" is a variant spelling of the name, "PHILLIPS," within the doctrine of *idem sonans.*

On these facts, the court concluded, in pertinent part, that:

2. The foreclosure proceeding and the other judgments indexed under the spelling "Phillips" should have attracted the attention of or stimulated further inquiry by a title searcher.

3. The foreclosure proceeding and the judgments indexed under the spelling "Phillips" were sufficient notice to put a careful and prudent examiner upon inquiry; and by such inquiry the Judgment at Issue would have been found.

. . . .

6. The Judgment at Issue was properly docketed and indexed.

7. [Appellants] could have discovered the Judgment at Issue with reasonable care and so had constructive notice of same.

8. The Judgment at Issue attached to and became a lien on the Land upon acquisition of that Land by Defendants.

9. Plaintiffs are entitled to levy execution on the Judgment at Issue and to the extent the same may involve the Land to . . . levy execution on the Land.

The trial court stayed the execution of its order pending resolution of this appeal.

## Standard of Review

In a bench trial "in which the superior court sits without a jury, 'the standard of review is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Findings of fact by the trial court in a non-jury trial . . . are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable *de novo.*'" *Luna v. Division of Soc. Servs.,* 162 N.C. App. 1, 4, 589 S.E.2d 917, 919 (2004) (quoting *Shear v. Stevens Building Co.,* 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992)). In the instant case, appellants do not challenge the trial court's findings of fact, which are therefore presumed correct. The court's legal conclusions regarding the existence of a valid lien are reviewed *de novo.*

Appellants argue that, because judgment against defendants was docketed under a misspelling of defendants' last name, the judgment cannot be a valid lien on the subject property. We disagree.

N.C. Gen. Stat. § 1-233 (2005) sets out requirements for docketing a judgment, and provides in relevant part that:

Every judgment . . . affecting title to real property, or requiring . . . the payment of money, shall be indexed and recorded by the clerk of said superior court on the judgment docket of the court. The docket entry must contain the file number for the case in which the judgment was entered, [and] the names of the parties[.] . . . The clerk shall keep a cross-index of the whole, with the dates and file numbers thereof[.] . . .

G.S. § 1-233. Under N.C. Gen. Stat. § 1-234 (2005), a judgment docketed in accordance with G.S. § 1-233 creates a lien that is effective against third parties:

Upon the entry of a judgment under G.S. 1A-1, Rule 58, affecting the title of real property, or directing . . . the payment of money, the clerk of superior court shall index and record the judgment on the judgment docket[.] . . . The judgment lien is effective as against third parties from and after the indexing of the judgment as provided in G.S. 1-233. The judgment is a lien on the real property in the county where the same is docketed[.] . . .

G.S. § 1-234.

Docketing a judgment provides notice of the existence of the lien on the property, and a judgment that is not docketed is ineffective as to third parties:

[U]nless the judgment is docketed . . . there can be no lien by virtue of the judgment alone. The docketing is required, in order that third persons may have notice of the existence of the judgment lien. . . . In our case no attempt whatever appears to have been made to have the judgment docketed, [and] . . . the judgment is not a lien upon the property, as against this defendant[.]

*Holman v. Miller*, 103 N.C. 118, 120-21, 9 S.E. 429, 430 (1889).

The issue presented is whether the judgment docketed under the name "Philips" instead of "Phillips" nonetheless provided sufficient notice, actual or constructive, to create a valid lien on the subject property. We conclude that on the facts of this case, the judgment was a lien on the property.

Plaintiffs argue that a judgment docketed and indexed in substantial compliance with the pertinent statutes will establish a lien on the judgment debtor's property, while defendants contend that the statutory requirements must be strictly followed in all respects. The North Carolina Supreme Court addressed this issue in *West v. Jackson*, 198 N.C. 693, 153 S.E. 257 (1930). In *West*, a tract of land was jointly owned by a Jesse and Nora Hinton, who borrowed money to purchase the property, and executed a deed of trust to secure the loan. After Mr. Hinton died, Nora Hinton obtained a loan from plaintiff in her name, also secured by the property. When the first lender tried to foreclose, plaintiff argued that the first deed of trust did not create a valid lien on the property because both the deed and deed of trust were indexed under "Jesse Hinton and wife." The Court framed the issue thusly:

The statute . . . requires in substance that the indexes of recorded instruments . . . 'shall state in full the names of all the

parties'[.] . . . [C]onstruction of this statute produces two diver-
gent theories. Upon one hand it is asserted that as indexing and
cross-indexing is an essential part of registration . . . and since
such indexing is statutory, the statute should be complied with to
the exact letter. Upon the other hand, it is insisted that the under-
lying philosophy of all registration is to give notice, and that
hence the ultimate purpose and pervading object of the statute is
to produce and supply such notice.

*Id.* at 694, 153 S.E. at 258. These are essentially the positions taken by
the parties in the instant case. The Court then stated:

Therefore, if the indexing and cross-indexing upon a given state
of facts is insufficient to supply the necessary notice, then such
indexing ought to fail as against subsequent purchasers or
encumbrancers. Nevertheless, it is a universally accepted princi-
ple that "constructive notice from the possession of the means of
knowledge will have the effect of notice, although the party was
actually ignorant, merely because he would not investigate. It is
well settled that if anything appears to a party calculated to
attract attention or stimulate inquiry, the person is affected with
knowledge of all the inquiry would have disclosed."

*Id.* (quoting *Wynn v. Grant*, 166 N.C. 39, 81 S.E. 949 (1914)) (citation
omitted). *West* addresses the indexing of a deed of trust in the office
of the register of deeds, rather than the docketing of a judgment.
Although these situations are governed by different statutes,[1] the
principles enunciated in *West* pertaining to the effectiveness of the
lien and placing the record or title examiner on notice are equally
applicable to the instant case. "In [*Ely v. Norman*, 175 N.C. 294, 298,
95 S.E. 543, 545 (1918)], the [Supreme Court] quoted with apparent
approval from the Supreme Court of Iowa to the effect that an index
will hold a subsequent purchaser to notice thereof if enough is dis-
closed by the index to put a careful or prudent examiner upon inquiry,
and if, upon such inquiry, the instrument would have been found."
*West*, 198 N.C. 694, 153 S.E. 257. The Court "conceded that the index-
ing and cross-indexing of the deed of trust in the case at bar is not a
strict compliance with the statute" but held that "there was sufficient
information upon the index and cross-index to create the duty of
making inquiry" and held that the indexing of the deed and deed of

---

1. N.C. Gen. Stat. § 1-233 (2005) governs docketing of judgments, while N.C. Gen.
Stat. § 161-22 (2005) addresses documents filed with the Register of Deeds.

trust was sufficient to create a lien on the property. *Id.* at 694-95, 153 S.E. at 258.

Thus, "for a recordation to be effective as notice there must be a substantial compliance with the indexing statutes. The general rule to be applied in determining the sufficiency of an irregular indexing has been stated by this Court in these terms:

'[T]he primary purpose of the law requiring the registration and indexing of conveyances is to give notice, and . . . an index will hold a subsequent purchaser or encumbrancer to notice if enough is disclosed by the index to put a careful and prudent examiner upon inquiry, and if upon such inquiry the instrument would be found.' "

*Cuthrell v. Camden County*, 254 N.C. 181, 184, 118 S.E.2d 601, 603 (1961) (recordation of old age assistance lien on property) (quoting *Dorman v. Goodman*, 213 N.C. 406, 412, 196 S.E. 352, 355 (1938)). Other appellate cases have held that a lien may be valid, despite minor docketing errors. *See, e.g., Wilson v. Taylor*, 154 N.C. 211, 218, 70 S.E. 286, 289 (1911) ("A party who may be affected by notice must exercise ordinary care to ascertain the facts, and if he fails to investigate when put upon inquiry, he is chargeable with all the knowledge he would have acquired if he had made the necessary effort to discover the truth.") (citations omitted), and *Valentine v. Britton*, 127 N.C. 57, 58, 37 S.E. 74, 75 (1900) ("We concur with the defendant, as was also held by the Court below, that 'J. Mizell,' or 'Jo. Mizell,' was a sufficient cross-indexing for a judgment against 'Josiah Mizell[.]' ").

The relationship between the standard of care for title examination and the question of the efficacy of the judgment to create a lien is as follows: If a title examiner exercising the standard of care would have found the judgment at issue, then it sufficiently complies with G.S. § 1-233 to create a lien on the property. In the instant case, plaintiffs established by uncontradicted expert testimony that in this case the standard of care for a reasonably prudent title examiner would be to search under part of the last name, such as "P-H-I-L," which would have revealed the judgment at issue. Additionally, even a search under "Phillips" would indicate defendants' involvement in several other proceedings, including a foreclosure; this should have spurred further inquiry. We conclude that plaintiffs substantially complied with G.S. § 1-233, and agree with the trial court's findings and conclusions.

Appellants, however, assert that the statutory requirements for indexing a judgment require "strict compliance" and that any spelling error automatically renders the judgment unenforceable against a third party purchaser. Under the pertinent case law, particularly *West v. Jackson, supra,* we have reached a different conclusion. Moreover, the cases cited by appellants are neither binding precedent nor persuasive authority, as none are factually similar. In *Holman v. Miller,* cited by appellants, the court's decision was based on the fact that the judgment in question had not been docketed in a timely manner and <u>not</u> on any defect or spelling error in the docketing. Thus, the Court's discussion of docketing practices dating back to "the reign of Henry VIII" is mere dicta. In *Trust Co. v. Currie,* 190 N.C. 260, 129 S.E. 605 (1925), also cited by appellants, the judgment in question was indexed under a totally different last name: "Quick," rather than "Currie."

---

Appellants contend that plaintiffs cannot maintain a priority lien against third party *bona fide* purchasers because plaintiffs were to blame for the erroneous indexing of the judgment. However, the issue before us is not identification of the party responsible for the misspelling of Phillips' name. Instead, we must determine whether the error, whatever its source, served to invalidate the judgment lien as to third party purchasers.

We conclude that the judgment of the trial court should be

Affirmed.

Judge BRYANT concurs.

Judge STEELMAN concurs in result only with separate opinion.

STEELMAN, Judge, concurs in the result.

I concur in the result reached by the majority opinion.

The only evidence presented to the trial court as to the appropriate standard of care for the examination of the judgment docket in Johnston County was the testimony of Rhonda Moore. Based upon this testimony the trial court found as a fact that "[t]he standard of care in eastern North Carolina, including Johnston County, for title searches in a case such as this one . . . requires a search of 'P-H-I-L' into the AOC computerized judgment index in the Office of the Clerk

of the Superior Court." On appeal, appellant did not assign error to any of the trial court's findings of fact. This finding is thus binding upon this Court and compels the result in this case.

The trial court's findings of fact were carefully and narrowly drawn, and are limited to the specific evidence presented in this case. Our decision in this case should also be so limited.