STROUD, Judge.
 

 *85
 
 Plaintiff-wife appeals an order granting summary judgment and dismissing her complaint and order denying her Rule 59 motion. Although the trial court titled the order as a summary judgment order, because the trial court conducted a bench trial and entered a final order dismissing Wife's case based upon findings of fact and conclusions of law, we consider the order based upon its substance and not its title. Because defendant-husband
 
 *355
 
 made no allegation or showing that he and Wife did not actually sign the Agreement in the presence of the notary public and no showing of any other irregularity in the acknowledgement of the separation agreement by the notary public, Husband failed to rebut the presumption of regularity of the acknowledgement established by North Carolina General Statute § 10B-99. Both the Agreement itself and Wife's testimony indicated that the Agreement was properly acknowledged in the presence of the notary under North Carolina General Statute § 10B-3(1), so the trial court erred by finding that "[n]o evidence was presented that the separation agreement and property settlement was signed in the presence of the notary or that the parties acknowledged to the notary that they had signed the agreement" and concluding that the Agreement was "not a valid contract" because it was not properly acknowledged under North Carolina General Statute §§ 52-10 and 10B-3. We reverse and remand for further proceedings consistent with this opinion.
 

 I. Background
 

 In September of 2015, wife filed a complaint against husband for breach of contract, specific performance, and attorney's fees, alleging that he had failed to perform his obligations under a separation and property settlement agreement ("Agreement") between the two of them. On 5 November 2015, Husband filed his answer and affirmative defenses; he denied many of the factual allegations of the complaint and raised affirmative defenses as follows:
 

 As defenses to any claims Plaintiff may have, Defendant asserts the following affirmative defenses: estoppel, waiver, duress, unconscionability and unclean hands. In addition, the Separation Agreement that is the subject of Plaintiff's action is VOID because the agreement was not
 
 *86
 
 properly acknowledged as required by
 
 N.C. Gen. Stat. § 52-10.1
 
 .
 
 [1]
 

 On 23 May 2017, Husband filed a motion to dismiss for failure to prosecute, and the trial court denied the motion on or about 12 October 2017, noting that the Trial Court Administrator had set the case for trial on 25 October 2017.
 

 On 25 October 2017, the case came on for hearing, and the trial court announced it would first consider Husband's motion to dismiss based upon the affirmative defense in his answer of a "procedural defect in the parties' separation[.]" Husband's attorney gave the trial court a copy of North Carolina General Statute § 52-10.1 regarding acknowledgment of separation agreements and presented Husband's argument regarding the defects in the acknowledgement of the Agreement. Husband's counsel argued that based upon the wording of the notarial certificate on the Agreement, "there was no indication that the notary has personal knowledge of the identity of the principal or that the notary acknowledged that the signature was the individual's signature."
 

 Wife, who was representing herself, then began to present her argument, but the trial court placed her under oath to testify. The trial court then conducted a direct examination of Wife regarding the execution and acknowledgement of the Agreement. Husband's counsel had no questions and did not tender any evidence. The trial court then announced that the case would be treated "very much akin to a motion for summary judgment" and announced that it would grant summary judgment for Husband, dismissing the case. The trial court stated that Husband had "rebutted the presumption of the validity" of the acknowledgement and that Wife's "evidence wasn't sufficient to show me that all the prerequisites of the acknowledgement were met."
 

 On 12 December 2017, the trial court entered its order which was entitled "ORDER FOR SUMMARY JUDGMENT[.]" The order stated that because the court was considering matters outside of the pleadings it was
 
 *356
 
 converting the hearing on the motion to dismiss to a summary judgment hearing, but it also made findings of fact and conclusions of law
 
 *87
 
 and granted summary judgment for Husband, dismissing Wife's complaint. On 28 December 2017, Wife filed a Rule 59 motion for amendment of the judgment or alternatively for a new trial. On 19 April 2018, the trial court denied the Rule 59 motion. On 18 May 2018, Wife appealed both the summary judgment and Rule 59 orders.
 

 II. Timeliness of Appeal
 

 Husband contends this Court has no jurisdiction to review the summary judgment order because Wife's notice of appeal for the summary judgment order was not timely filed. But despite the title of the order, as explained further below, Wife actually appealed a final order on the merits, with findings of fact, entered after a bench trial.
 
 See generally
 

 Edwards v. Edwards
 
 ,
 
 42 N.C. App. 301
 
 , 307,
 
 256 S.E.2d 728
 
 , 732 (1979) ("Examination of the record reveals, however, that although plaintiff moved for a summary judgment and the court at one point seemed to indicate that it was allowing the motion, what actually occurred was that the court heard the testimony of witnesses, who were subject to cross-examination by defendant's counsel, and after hearing this evidence and on the basis thereof, the court found the facts as required by G.S. 50-10. Thus, the judgment entered in this case was not a summary judgment but was one rendered by the court after making appropriate findings of fact.").
 

 In this case, the analysis of the distinction between a summary judgment order and a final order following a bench trial is necessary to determine the applicability of Rule 59.
 
 See generally
 

 Tetra Tech Tesoro, Inc. v. JAAAT Tech. Servs., LLC
 
 , --- N.C. App. ----, ----,
 
 794 S.E.2d 535
 
 , 538 (2016) ("All of the enumerated grounds in Rule 59(a), and the concluding text addressing an action tried without a jury, indicate that this rule applies only after a trial on the merits or, at a minimum, a judgment ending a case on the merits." (quotation marks omitted)). Because this was a trial on the merits upon which a final judgment was entered, despite the title of the order and the trial court's intent to consider the case as "akin to a motion for summary judgment," Wife's Rule 59 motion tolled the time for appeal of the trial court's order dismissing her case.
 
 See
 

 id
 
 ; N.C. R. App. P. 3(c) ("In civil actions and special proceedings, a party must file and serve a notice of appeal ... within thirty days after entry of judgment if the party has been served with a copy of the judgment within the three-day period prescribed by Rule 58 of the Rules of Civil Procedure ; or ... if a timely motion is made by any party for relief under Rules 50(b), 52(b) or 59 of the Rules of Civil Procedure, the thirty-day period for taking appeal is tolled as to all parties until entry of an order disposing of the motion and then runs as to each party from the date of
 
 *88
 
 entry of the order or its untimely service upon the party, as provided in subdivisions (1) and (2) of this subsection (c).")
 

 A. Type of Order on Appeal
 

 This appeal is complicated by the trial court's
 
 sua sponte
 
 designation of the proceeding as a summary judgment hearing and by the order entered after the hearing designated as a summary judgment order, despite having conducted a bench trial taking live testimony, and making findings of fact. Since the trial court's standards for deciding the case, the applicability of Rule 59, and our standards of review are dictated by the substance of the motion under consideration and the type of hearing conducted, where the wrong title is assigned to the hearing and order, we still must consider the issues under the correct standards and law.
 
 See generally
 

 Westmoreland v. High Point Healthcare Inc
 
 .,
 
 218 N.C. App. 76
 
 , 79,
 
 721 S.E.2d 712
 
 , 716 (2012) (noting substance, not "labels," determines our review). We review an order based upon substance and not upon the label or title the trial court assigns to it.
 
 See
 
 id.
 

 The trial court conducted a bench trial, not a summary judgment hearing, and we make this determination based upon several factors: (1) Neither party had filed a motion for summary judgment and neither had filed any affidavits or other evidence which could support a ruling on summary judgment; (2) neither party expected or requested a summary judgment hearing; the trial court determined
 
 sua sponte
 
 to treat Husband's motion to dismiss as a summary judgment motion; and
 
 *357
 
 (3) the trial court made findings of fact, "and summary judgment presupposes that there are no triable issues of material fact."
 
 Hodges v. Moore
 
 ,
 
 205 N.C. App. 722
 
 , 723,
 
 697 S.E.2d 406
 
 , 407 (2010) (citations and quotation marks omitted);
 
 see also
 

 War Eagle, Inc. v. Belair
 
 ,
 
 204 N.C. App. 548
 
 , 552,
 
 694 S.E.2d 497
 
 , 500 (2010) ("By making findings of fact on summary judgment, the trial court demonstrates to the appellate courts a fundamental lack of understanding of the nature of summary judgment proceedings. We understand that a number of trial judges feel compelled to make findings of fact reciting those 'uncontested facts' that form the basis of their decision. When this is done, any findings should clearly be denominated as 'uncontested facts' and not as a resolution of contested facts. In the instant case, there was no statement that any of the findings were of 'uncontested facts.' ").
 

 Although the trial court treated the case as if Husband had "rebutted the presumption of the validity" of the acknowledgement, he had not filed any affidavit or response sufficient to rebut the presumption but only denied validity of the Agreement in his answer:
 

 A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element
 
 *89
 
 of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim. Generally this means that on undisputed aspects of the opposing evidential forecast, where there is no genuine issue of fact, the moving party is entitled to judgment as a matter of law.
 
 If the moving party meets this burden, the non-moving party must in turn either show that a genuine issue of material fact exists for trial or must provide an excuse for not doing so. If the moving party fails to meet his burden, summary judgment is improper regardless of whether the opponent responds
 
 . The goal of this procedural device is to allow penetration of an unfounded claim or defense before trial.
 

 If the moving party satisfies its burden of proof, then the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. The non-moving party may not rest upon the mere allegations of his pleadings.
 

 Subsection (e) of Rule 56 does not shift the burden of proof at the hearing on motion for summary judgment. The moving party still has the burden of proving that no genuine issue of material fact exists in the case.
 
 However, when the moving party by affidavit or otherwise presents materials in support of his motion, it becomes incumbent upon the opposing party to take affirmative steps to defend his position by proof of his own. If he rests upon the mere allegations or denial of his pleading, he does so at the risk of having judgment entered against him. The opposing party need not convince the court that he would prevail on a triable issue of material fact but only that the issue exists. However, subsection (e) of Rule 56 precludes any party from prevailing against a motion for summary judgment through reliance on conclusory allegations unsupported by facts.
 

 Lowe v. Bradford
 
 ,
 
 305 N.C. 366
 
 , 369-70,
 
 289 S.E.2d 363
 
 , 366 (1982) (emphasis added) (citations and quotation marks omitted).
 

 Here, the trial court treated Husband as the "moving party" for purposes of summary judgment, but he never met his "burden of proving that no genuine issue of material fact exists in the case."
 

 Id.
 

 at 370
 
 ,
 
 289 S.E.2d at 366
 
 . Husband did not file an affidavit or present any evidence,
 
 *90
 
 which is unsurprising since he did not move for summary judgment. Despite the lack of
 
 any
 
 showing from Husband that he may be entitled to summary judgment, the trial court reasoned that Husband had "rebutted" the presumption of regularity and required Wife to testify to present evidence in response to Husband's mere denial. In
 
 Hill v. Durrett
 
 , Judge (now Justice) Davis noted the differences between a summary judgment hearing and a bench trial upon the substance of the hearing and order, despite confusion over the type of hearing before the trial court, noting,
 

 We take this opportunity to remind the bench and bar that summary judgments and trials are separate and distinct proceedings that apply in different circumstances
 
 *358
 
 under our Rules of Civil Procedure, and the meaningful distinctions that exist between them should not be blurred. While we recognize that family law cases under Chapter 50 often require the presiding judge to serve as the finder of fact, the North Carolina Rules of Civil Procedure remain applicable to such cases absent the existence of statutes establishing a different procedure.
 

 --- N.C. App. ----, ----,
 
 826 S.E.2d 470
 
 , 475 (2019) (footnote omitted).
 

 Even if the trial court, as it stated, was considering the matter as a motion for summary judgment, it should have considered Wife's testimony as true and construed it in the light most favorable to her, not to Husband.
 
 Trillium Ridge Condo. Ass'n, Inc. v. Trillium Links & Vill., LLC
 
 ,
 
 236 N.C. App. 478
 
 , 487,
 
 764 S.E.2d 203
 
 , 210 (2014) ("Both before the trial court and on appeal, the evidence must be viewed in the light most favorable to the nonmoving party and all inferences from that evidence must be drawn against the moving party and in favor of the non-moving party." (citation and quotation marks omitted)).
 
 Only
 
 if there was no genuine issue of material fact based upon the view of Wife's evidence in the light most favorable to her,
 
 see
 

 id.
 

 , could Husband be entitled to judgment as a matter of law, assuming the law supported his position.
 
 See
 

 Lowe,
 

 305 N.C. at 369-70
 
 ,
 
 289 S.E.2d at 366
 
 . Instead, here, the trial court made findings of fact considering Wife's testimony in the light most favorable to Husband.
 

 The trial court found, "No evidence was presented that the separation agreement and property settlement was signed in the presence of the notary or that the parties acknowledged to the notary that they had signed the agreement." But the Agreement itself indicates that the parties signed in the presence of the notary, and Wife testified that she
 
 *91
 
 and Husband signed in the presence of the notary. Since the hearing had "virtually all of the hallmarks" of a bench trial, we consider the trial court's order as a final judgment following a bench trial, despite its label from the trial court.
 
 See
 

 Hill
 
 , --- N.C. App. at ----,
 
 826 S.E.2d at 475
 
 .
 

 B. Rule 59 Motion and Tolling of Time for Appeal
 

 In addition, the Rule 59 motion must be a proper Rule 59 motion to toll the time for appeal.
 
 See generally
 

 Batlle v. Sabates
 
 ,
 
 198 N.C. App. 407
 
 , 413-14,
 
 681 S.E.2d 788
 
 , 793-94 (2009). Wife moved for a new trial pursuant to Rule 59(a)(7) and (8) or for amendment of judgment under rule 59(e) :
 

 If a timely motion is made by any party for relief under Rules 50(b), 52(b) or 59 of the Rules of Civil Procedure, the 30-day period for taking appeal is tolled as to all parties until entry of an order disposing of the motion and then runs as to each party from the date of entry of the order.
 

 As a result, the timeliness of Plaintiff's appeal from the 21 September 2007 order hinges upon whether Plaintiff's 5 October 2007 motion sufficiently invoked the provisions of N.C. Gen.Stat. § 1A-1, Rules 50(b), 52(b), or 59.
 

 In analyzing the sufficiency of a motion made pursuant to N.C. Gen.Stat. § 1A-1, Rule 59, one should keep in mind that a failure to give the number of the rule under which a motion is made is not necessarily fatal, if the grounds for the motion and the relief sought is consistent with the Rules of Civil Procedure. As long as the face of the motion reveals, and the Clerk and the parties clearly understand, the relief sought and the grounds asserted and as long as an opponent is not prejudiced, a motion complies with the requirements of N.C. Gen.Stat. § 1A-1, Rule 7(b)(1). In other words, to satisfy the requirements of Rule 7(b)(1), the motion must supply information revealing the basis of the motion. However, while a request that the trial court reconsider its earlier decision "granting the sanction" may properly be treated as a Rule 59(e) motion," a motion made pursuant to N.C. Gen. Stat. § 1A-1, Rule 59, cannot be used as a means to reargue matters already argued or to put forward arguments which were not made but could have been made. Thus, in order to properly address the issues raised by Defendant's dismissal motion, we must examine the allegations in Plaintiff's motion to ascertain
 
 *359
 

 *92
 
 whether Plaintiff stated a valid basis for seeking to obtain relief pursuant to N.C. Gen. Stat. § 1A-1, Rule 59.
 

 Id.
 

 (citations, quotation marks, brackets, and footnote omitted).
 

 Thus, if at least one of the grounds asserted in Wife's Rule 59 motion is a proper basis for new trial under Rule 59, the motion tolls the time for appeal.
 

 N.C. Gen. Stat. Sec. 1A-1, Rule 59(a) sets forth the various grounds for a new trial. Rule 59(a)(8) permits a new trial for errors in law occurring at the trial and objected to by the party making the motion. The trial court's ground for the new trial - for errors committed by the Court - is an order under Rule 59(a)(8).
 

 Both a motion and an order for new trial filed under Rule 59(a)(8) have two basic requirements. First, the errors to which the trial judge refers must be specifically stated. Second, the moving party must have objected to the error which is assigned as the basis for the new trial. N.C. Gen. Stat. 1A-1, Rule 59(a)(8).
 

 Barnett v. Security Ins. Co. of Hartford
 
 ,
 
 84 N.C. App. 376
 
 , 380,
 
 352 S.E.2d 855
 
 , 858 (1987) (citations and quotation marks omitted).
 

 Wife's motion noted that the trial court's order found that "[n]o evidence was presented that the separation agreement and property settlement was signed in the presence of the notary[.]" Wife's motion included quotes from a transcription of the testimony at the hearing, including her testimony about going before the notary, providing identification, and signing the Agreement. Wife's motion noted the trial court's comments at the hearing:
 

 Judge: I don't recall you saying that after she looked at the document that she had you all then sign it.
 

 Plaintiff: I did say that.
 

 Judge. You may have thought you said that. I don't recall you saying that. What I recall you saying was that she looked at the licenses she looked at the names on the document. And I said, well you know you can't tell me what she looked at, but that's what you said. And I don't' recall you saying that after that's when you signed the documents. I don't remember that testimony at all.
 

 (Quotation marks omitted.)
 

 *93
 
 But the transcript shows that Wife
 
 did
 
 testify that they signed the document after the notary looked at their licenses; the trial court's recollection was incorrect. Of course, at the initial hearing, the trial court did not have the benefit of a transcript. In Wife's Rule 59 motion, Wife noted why the evidence was insufficient to support the trial court's finding there was "[n]o evidence" of signing before the notary, including the transcription of testimony, and the error of law in application of North Carolina General Statute § 10B-3 to the Agreement. Wife preserved these arguments before the trial court because she noted both her testimony and the correct law, as stated in
 
 Moore v. Moore
 
 ,
 
 108 N.C. App. 656
 
 ,
 
 424 S.E.2d 673
 
 ,
 
 aff'd per curiam
 
 ,
 
 334 N.C. 684
 
 ,
 
 435 S.E.2d 71
 
 (1993), at the hearing. Wife's appeal was timely, since the order dismissing Wife's complaint was a final order from a bench trial which resolved all issues, and her Rule 59 motion was a proper motion which tolled the time for her appeal.
 
 [2]
 

 Wife filed her notice of appeal of both orders within thirty days of the trial court's order denying her Rule 59 motion, so her appeal of both orders is timely.
 
 See
 
 id.
 

 III. Acknowledgment of Agreement
 

 Due to the erroneous label by the trial court as a summary judgment order, Wife's brief substantively focuses on the law regarding acknowledgement of the Agreement and why summary judgment dismissing the case was inappropriate. Husband's brief focuses only on the timeliness of the appeal. Husband notes that he "believes that [Wife's] analysis regarding summary judgment is correct" but argues only that "a motion under Rule 59
 
 *360
 
 was not the appropriate way for [Wife] to challenge the order granting summary judgment." Thus Husband tacitly concedes that the trial court's interpretation of the law regarding the acknowledgment of the Agreement was in error. Therefore, the central legal issue presented is whether the trial court erred in concluding the Agreement was void based upon lack of proper acknowledgement under North Carolina General Statute §§ 52-10 and 10B-3.
 

 A. Standard of Review
 

 Because the order on appeal is a final order from a bench trial, despite its label as a summary judgment order, our standard of review
 

 *94
 
 [i]n a bench trial in which the ... court sits without a jury, the standard of review is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Findings of fact by the trial court in a non-jury trial are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable
 
 de novo
 
 .
 

 Hinnant v. Philips
 
 ,
 
 184 N.C. App. 241
 
 , 245,
 
 645 S.E.2d 867
 
 , 870 (2007) (citation, quotation marks, and ellipses omitted). The finding of fact challenged here is "[n]o evidence was presented that the separation agreement and property settlement was signed in the presence of the notary or that the parties acknowledged to the notary that they had signed the agreement." The challenged conclusion of law is that "[t]he Separation Agreement and Property Settlement is not a valid contract because it was not properly acknowledged."
 

 B. Presumption of Regularity of Notarial Acts
 

 We first note the cases and statutes governing notarial acts
 
 [3]
 
 and the presumption of regularity of notarial acts:
 

 In the absence of evidence of fraud on the part of the notary, or evidence of a knowing and deliberate violation, we recognize a presumption of regularity to notarial acts. N.C. Gen. Stat. § 10B-99 (2013). This presumption of regularity allows notarial acts to be upheld, provided there has been substantial compliance with the law. N.C. Gen. Stat. § 10B-99. Thus, the presumption of regularity acts to impute a substantial compliance component to notarial acts, including the administration of oaths.
 

 In re Adoption of Baby Boy
 
 ,
 
 233 N.C. App. 493
 
 , 499-505,
 
 757 S.E.2d 343
 
 , 347-50 (2014) (quotation marks omitted) (determining there was statutory compliance with administration of an oath where "[t]he notary was physically present when the oath was administered, aware of the circumstances, and thereby implicitly assented to its administration, which was done in her name. By these facts, it sufficiently appears that the administration of the oath was the act of the notary."). As there was
 
 *95
 
 no "evidence of fraud on the part of the notary, or evidence of a knowing and deliberate violation" and Husband never claimed that he did not sign the Agreement in the present of the notary, the Agreement itself should at the very least been accorded a presumption of regularity, and this would preclude the dismissal of Wife's complaint.
 

 Id.
 

 North Carolina General Statute § 10B-3 sets forth the definitions applicable to Chapter 10B.
 
 See
 
 N.C. Gen. Stat. § 10B-3 (2017). An "acknowledgment" is defined as:
 

 A notarial act in which a notary certifies that at a single time and place all of the following occurred:
 

 a. An individual appeared in person before the notary and presented a record.
 

 b. The individual was personally known to the notary or identified by the notary through satisfactory evidence.
 

 c. The individual did either of the following:
 

 i. Indicated to the notary that the signature on the record was the individual's signature.
 

 *361
 
 ii. Signed the record while in the physical presence of the notary and while being personally observed signing the record by the notary.
 

 N.C. Gen. Stat. § 10B-3(1). The portion of the document in question here is the "notarial certificate" or "certificate," defined as
 

 [t]he portion of a notarized record that is completed by the notary, bears the notary's signature and seal, and states the facts attested by the notary in a particular notarization.
 

 N.C. Gen. Stat. § 10B-3(12).
 

 Before the trial court, Husband's attorney argued that the notarial certificate was not proper because North Carolina General Statute § 10B-3 "section C2 has been satisfied, but I would say C1 and B have not been satisfied." Husband did not challenge the acknowledgment under § 10B-3(1)(a), "[a]n individual appeared in person before the notary and presented a record[;]" his counsel stated, "[a]rguably, that's occurred." N.C. Gen. Stat. § 10B-3(1)(a). Thus, Husband's argument was that the certificate failed because it did not show (1) Husband and Wife were "personally known to the notary or identified by the notary through satisfactory evidence[;]" and (2) they "[i]ndicated to the notary that the signature[s] on the record [were their] ... signature[s]."
 

 *96
 
 Here, the certificate on the Agreement reads,
 

 IN WITNESS WHEREOF, the parties have signed, sealed and acknowledged this Agreement in duplicate originals, one of which is retained by each of the parties hereto.
 

 [Husband's signature] JACOB MICHAEL HICKS (Husband)
 

 Sworn to and subscribed to before me
 
 ,
 
 this the 14 day of May, 2009. [Notary seal.]
 

 [Signature of Monica R. Livingston in cursive and print] (Notary Public)
 

 My commission expires: Nov. 29, 2010
 

 The quoted portion is repeated verbatim again with the Wife's name and signature.
 

 We first note that North Carolina General Statute § 10B-3(1)(c) requires that the person signing the document must
 
 either
 
 "indicate[ ] to the notary that the signature on the record was the individual's signature"
 
 or
 
 "sign[ ] the record while in the physical presence of the notary and while being personally observed signing the record by the notary." N.C. Gen. Stat. § 10B-3(1)(c). In other words, there is no requirement to satisfy
 
 both
 
 "C2" and "C1" as Husband's counsel seemed to contend. Husband conceded that the parties had signed in the presence of the notary, satisfying subsection (c)(2), so there was no need for the acknowledgement to comply with subsection (c)(1) as well.
 
 See
 
 N.C. Gen. Stat. § 10B-3(c). Thus, despite Husband's counsel's statements, the only portion of the acknowledgement challenged by Husband was "B" that "[t]he individual was personally known to the notary or identified by the notary through satisfactory evidence." N.C. Gen. Stat. § 10B-3(1)(b).
 

 The notarial certificate does not include as much detail or the exact wording as some commonly used forms, but it includes the substance required by North Carolina General Statute § 10B-3.
 
 [4]
 

 See
 
 id.
 

 The notary certified that the agreement was "sworn to and subscribed to before me" by the "parties," who were identified in the Agreement as Husband and Wife, on 14 May 2009. To "[s]ubscribe" the Agreement means to sign it.
 
 See
 
 Black's Law Dictionary 1655 (10th ed. 2009) (defining "subscribe" as "[t]o write (one's name) underneath; to put (one's signature) on a document").
 

 *97
 
 "[B]efore me" means that the parties signed in the presence of the notary. Further, any minor omissions or issues in the wording of a certificate are covered by North Carolina General Statute § 10B-40(a1)(1). "By making or giving a notarial certificate,
 
 whether or not stated in the certificate
 
 , a notary certifies ... [a]s to an acknowledgment,
 
 all those things described in G.S. 10B-3(1)
 
 ." N.C. Gen. Stat. § 10B-40(a1)(1) (2017) (emphasis added). Based upon the certificate on the Agreement alone, the trial court erred in determining that the
 
 *362
 
 acknowledgement of the Agreement was not sufficient since it failed to consider the statutory presumption of regularity, especially since Husband never made any factual allegations of irregularity to rebut the presumption of regularity or contended the signature on the Agreement was not his. While Husband's answer included as an affirmative defense the allegation that the Agreement was void because it "was not properly acknowledged as required by NCGS 52-10.1 [;]" he did not deny that he signed the Agreement before the notary or make any factual allegations about his claimed defect in the acknowledgement.
 

 Despite Husband's failure to present any evidence to rebut the presumption of regularity of the acknowledgment, the trial court then called Wife to testify about the signing of the Agreement. Answering the trial court's questions, Wife testified:
 

 A. We came into the bank. We had to sit down for a couple of minutes. She called us up. She asked why we were there, got the information. She asked for both of our identifications. She looked through the document.
 

 ....
 

 A. Unh-hunh. And she asked for both of us to submit our licenses to her. She might have made a copy of those, but she compared those to --
 

 Q. (Interposing) Ma'am, you can't tell me what you think she did.
 

 A. OK. OK. She compared those to--
 

 Q. (Interposing) You can't tell me what you think she did.
 

 A. I know that she compared those to what--
 

 Q. (Interposing) How do you know that, ma'am?
 

 *98
 
 A. Well, she looked at the document, and she looked at our licenses, and she looked at what the names were in the contract.
 

 Q. Ma'am, you can't tell me what she looked at.
 

 A. Oh. OK.
 

 Q. I mean, you can assume, but I can't take your assumptions.
 

 A. Well, she looked our licenses and made sure that they were us.
 

 Q. Ma'am, I don't know that I can even take that testimony.
 
 [5]
 

 A. OK.
 

 Q. You definitely can tell me that she asked for your licenses and you gave them to her.
 

 A. OK. She asked for our licenses, and we gave them to her.
 

 Q. And you can't tell me what she did with--you can't tell me what she said. If she said what she was doing. You can't tell me what you assume she was doing.
 

 A. OK. She did ask for our licenses, and we gave them to her.
 

 Q. OK. And anything else?
 

 A.
 
 We had to sign.
 

 (Emphasis added). In summary, Wife testified that she and Husband went to a bank, presented their drivers licenses and the Agreement to the notary, and signed the Agreement after the notary had taken their
 
 *99
 
 licenses. Despite this evidence, the trial court found that "No evidence was presented that the separation agreement and property settlement was signed in the presence of the notary or that the parties acknowledged to the notary that they had signed the agreement" even though Husband did not contest
 
 *363
 
 that they had signed in the presence of the notary. Further, the certificate itself stated that the parties had "subscribed" the Agreement "before" the notary.
 

 And even if we were to treat the matter as a summary judgment motion, the result would be the same, based upon
 
 Moore
 
 . In Wife's argument before the trial court, Wife noted
 
 Moore
 
 , which held that the plaintiff husband had failed to rebut the presumption of regularity of the acknowledgment of a separation agreement despite his affidavit claiming that the notary was not in the room the entire time the documents were being signed:
 

 Plaintiff has failed to advance a genuine issue of material fact which would justify going forward with a trial on the issue of the validity of the separation agreement.
 

 Plaintiff's evidence does not overcome the presumption of legality of execution created by the notarization of the separation agreement. North Carolina recognizes a presumption in favor of the legality of an acknowledgment of a written instrument by a certifying officer.
 
 To impeach a notary's certification, there must be more than a bare allegation that no acknowledgment occurred.
 
 In
 
 Skinner
 
 , for example, the defendant challenged the plaintiff's verification of his Rule 11 complaint. This Court stated:
 

 There was no showing that plaintiff did not in fact sign the verification, and nothing in the record suggests that the signature which appears thereon was not in fact his signature. The certificate to the verification signed by the notary public and attested by her seal certifies that the verification was sworn to and subscribed" before her, and nothing in the record impeaches that certification.
 

 Here, plaintiff never asserts that the actual signature on the agreement is other than his own-he suggests only a technical violation of N.C.Gen.Stat. § 52-10.1. He does not bring forth sufficient evidence to overcome the presumption created in favor of the validity of the acknowledgment
 
 .
 

 Moore
 
 ,
 
 108 N.C. App. at 658-59
 
 ,
 
 424 S.E.2d at 675
 
 (emphasis added) (citations, quotations, and brackets omitted).
 

 *100
 
 The trial court determined
 
 Moore
 
 did not support Wife's contentions, interjecting, "Well, let's stop for a second. That's talking about
 
 Plaintiff's
 
 evidence, alright?" (Emphasis added.) But in
 
 Moore
 
 , the legal positions of the parties and their titles as parties were opposite this case: the
 
 plaintiff
 
 was the "moving party" seeking to set aside the agreement based upon a defect in the acknowledgment of the separation agreement, just as
 
 defendant
 
 is in this case.
 
 See
 

 id.
 
 at 657,
 
 424 S.E.2d at 674
 
 ("Plaintiff-husband, William J. Moore, originally filed a declaratory judgment action on 18 June 1987 to have a separation agreement entered into with defendant-wife, Betty Evans Moore, declared null and void on the grounds that the agreement had not been properly acknowledged in violation of the requirements of
 
 N.C. Gen. Stat. § 52-10.1
 
 and
 
 N.C. Gen. Stat. § 52-10
 
 (b).
 
 Plaintiff claims the agreement violated these statutory provisions because a notary public did not witness him sign the agreement, nor did plaintiff acknowledge his signature to the notary.
 
 Defendant denied the invalidity of the agreement and raised affirmative defenses of estoppel, waiver, and ratification. Defendant counterclaimed for specific performance of the agreement." (Emphasis added)). Thus, Wife was correct that
 
 Moore
 
 supported her argument: "[Husband's] evidence does not overcome the presumption of legality of execution created by the notarization of the separation agreement[,]"
 

 id.
 

 at 659
 
 ,
 
 424 S.E.2d at 675
 
 , because Husband presented no affidavit and no evidence to rebut the presumption. There was no showing that Husband did not sign the agreement, and nothing in the record suggests that the signature which appears on the agreement was not in fact his signature. The certificate to the verification signed by the notary public and attested by her seal certifies that the verification was "[s]worn to and subscribed to before" her, and nothing in the record impeaches that certification. Even considering the issue as a summary judgment motion, the trial court should have denied Husband's motion based upon his failure to rebut the presumption of regularity.
 
 See
 

 id.
 
 at 658-59,
 
 424 S.E.2d at 675
 
 .
 

 *364
 
 Because Husband presented no evidence to rebut the regularity of the notarization of the Agreement, and Wife's evidence, particularly the Agreement itself, supported the presumption of regularity of the notarization, the trial court erred in concluding as a matter of law that the Agreement was void because it was not properly acknowledged. We therefore reverse the trial court's order dismissing Wife's claims based upon the Agreement for this reason.
 

 IV. Conclusion
 

 Because we are reversing the order allowing Husband's motion to dismiss, we need not address Wife's argument regarding the denial of
 
 *101
 
 her Rule 59 motion. The order is reversed and we remand for further proceedings consistent with this opinion.
 

 REVERSED and REMANDED.
 

 Judges INMAN and ZACHARY concur.
 

 [1]
 

 "Any married couple is hereby authorized to execute a separation agreement not inconsistent with public policy which shall be legal, valid, and binding in all respects; provided, that the separation agreement must be in writing and acknowledged by both parties before a certifying officer as defined in G.S. 52-10(b). Such certifying officer must not be a party to the contract."
 
 N.C. Gen. Stat. § 52-10.1
 
 (2017). A notary public is one of the certifying officers designated by North Carolina General Statute § 52-10.
 
 See
 

 N.C. Gen. Stat. § 52-10
 
 (2017).
 

 [2]
 

 In the hearing on the Rule 59 motion, the trial court did not consider Wife's substantive argument but denied the Rule 59 motion solely because the judgment "ended the case at the summary judgment state and not after a trial or a verdict" and Rule 59 "does not grant relief for summary judgment[.]"
 

 [3]
 

 "Notarial act, notary act, and notarization. -- The act of taking an acknowledgment, taking a verification or proof or administering an oath or affirmation that a notary is empowered to perform under G.S. 10B-20(a)." N.C. Gen. Stat. § 10B-3(11) (2017).
 

 [4]
 

 The hearing transcript reflects that Husband's counsel presented the forms as used in her law office to the trial court as examples of proper certificates, but those forms are not in our record.
 

 [5]
 

 North Carolina General Statute § 10B-3(16) defines "[p]ersonal appearance and appear in person before a notary" as "[a]n individual and a notary are in close physical proximity to one another so that they may freely see and communicate with one another and exchange records back and forth during the notarization process." N.C. Gen. Stat. § 10B-3(16). North Carolina General Statute § 10B-3(22) defines "[s]atisfactory evidence" as "[i]dentification of an individual based on either of the following: a. At least one current document issued by a federal, state, or federal or state-recognized tribal government agency bearing the photographic image of the individual's face and either the signature or a physical description of the individual." N.C. Gen. Stat. § 10B-3(22). Wife's testimony shows that she and Husband "appear[e]d in person" before the notary, provided their drivers licenses as "[s]atisfactory evidence" of their identities and signed the Agreement. N.C. Gen. Stat. § 10B-3(16), (22).