IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-154

Filed: 31 December 2020

Macon County, No. 15-CVS-438

Charles F. Walter, Jr., Plaintiff,

v.

LAWRENCE JOSEPH WALTER, SR.; LAURIE WALTER; LAWRENCE JOSEPH WALTER, JR.; ANGEL WALTER; THOMAS D. WALTER, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF LOUISE WALTER; JUDITH WALTER; THE LOUISE M. WALTER TRUST u/t/d FEBRUARY 7, 2000 AS AMENDED THROUGH THOMAS D. WALTER, FIRST SUCCESSOR TRUSTEE; MELANIE WALTER DAY; PATRICK DAY; EDWIN BOYER as ADMINISTRATOR AD LITEM OF THE ESTATE OF CHARLES WALTER; BARBARA EVERS as PERSONAL REPRESENTATIVE OF THE ESTATE OF CHARLES WALTER, Defendants.

Appeal by Plaintiff Charles F. Walter, Jr., from judgment entered 7 November 2019 by Judge Tommy Davis in Macon County Superior Court. Heard in the Court of Appeals 20 October 2020.

*McKinney Law Firm, P.A., by Zeyland G. McKinney, Jr., for Plaintiff-Appellant.*

*Kenneth W. Fromknecht, II, for Defendants-Appellants Lawrence Joseph Walter, Sr., Laurie Walter, Lawrence Joseph Walter, Jr., and Angel Walter.*

COLLINS, Judge.

Plaintiff Charles F. Walter, Jr., appeals from a final judgment reforming a deed from his mother's trust to his father due to a mutual mistake of fact and denying Plaintiff's claim that his father's attorney-in-fact improperly deeded the land at issue

to Plaintiff's brother and nephew. Plaintiff argues that the trial court erred by (1) denying his motion for summary judgment, (2) granting Defendants' motion for directed verdict, (3) proceeding with a bench trial after granting Defendants' motion for directed verdict, (4) concluding that a mutual mistake of fact justified reforming the deed, and that (5) there was sufficient evidence that the attorney-in-fact exceeded her authority by executing the deed. We conclude that Plaintiff's claim that the attorney-in-fact exceeded her authority was time-barred and that the trial court did not err by reforming the deed from Plaintiff's mother's trust. We dismiss Plaintiff's challenges to the trial court's denial of his motion for summary judgment and the bench trial.

## I. Procedural History

Plaintiff instituted this action on 23 July 2015 and demanded a jury trial. Defendants[1] answered, raised counterclaims, and also demanded a jury trial. Both Plaintiff and Defendants moved for summary judgment. On 19 July 2019, the trial court denied the motions for summary judgment.

At the close of Plaintiff's evidence, all of the defendants, except Melanie Walter Day and Patrick Day, moved for a partial directed verdict. Defendants argued that the statute of limitations and collateral estoppel barred Plaintiff's claims, and that

---

[1] Defendants Lawrence Walter Sr., Lawrence Walter Jr., and Laurie Walter joined in a single brief to this Court. For purposes of our discussion, we refer to them collectively as "Defendants" throughout. The remaining defendants did not file a brief.

Plaintiff had offered insufficient evidence. Defendant Barbara Evers also argued collateral estoppel. Defendants Thomas and Judith Walter contended that Plaintiff's deed by estoppel theory was inapplicable and joined Defendants' arguments regarding the statute of limitations.

After hearing arguments, the trial court granted Defendants' motion. The trial court then excused the jury for a lunch break and Plaintiff left the courtroom. At that point, the remaining parties purported to waive trial by jury and the trial court proceeded to decide the remaining issue of reformation in a bench trial. The trial court entered final judgment on 7 November 2019 and Plaintiff gave written notice of appeal on 25 November 2019.

## II. Factual Background

Charles F. Walter and Louise M. Walter ("Mr. and Mrs. Walter," respectively) were married and had four children: Dr. Charles F. Walter, Lawrence Walter, Melanie Walter Day, and Thomas D. Walter. In January 1969, Mr. and Mrs. Walter were deeded property in Macon County, North Carolina (the "Subject Property").

Mrs. Walter subsequently filed for dissolution of marriage in Florida in February of 2000. On 10 April 2000, Mrs. Walter executed a quitclaim deed (the "Trust's Deed") purporting to transfer any interest she had in the Subject Property to the Louise M. Walter Trust (the "Trust").

Mr. and Mrs. Walter subsequently entered into a Mediated Settlement Agreement on 14 December 2000 (the "Marital MSA"). The Marital MSA provided that Mrs. Walter would execute a quitclaim deed to Mr. Walter, to give him "sole ownership and possession" of the Subject Property. The deed would be held in escrow and released when Mr. Walter paid Mrs. Walter $83,592. On 8 January 2001, the Florida trial court entered an order requiring Mr. and Mrs. Walter to comply with the terms of the Martial MSA and execute the documents required to do so. Mr. Walter took out a cashier's check for the payment required by the Marital MSA on 23 January 2001, and apparently provided the check to Mrs. Walter, but Mrs. Walter did not immediately execute the deed. As a result, on 16 July 2001, Mr. Walter's attorney wrote Mrs. Walter's attorney demanding a deed conveying the property from the Trust and threatening litigation if she did not comply.

Mr. Walter was hospitalized in Florida between February and March 2003 after he fell and injured his hip. After the injury, he executed a durable power of attorney (the "POA") designating Barbara Evers as his agent. The POA authorized Evers, in pertinent part,

> to sell any and every kind of property that I may own now or in the future, real, personal, intangible or mixed, including without being limited to contingent and expectant interests, marital rights and any rights of survivorship incident to joint tenancy or tenancy by the entirety, upon such terms and conditions and security as my Agent shall deem appropriate . . . .

The POA also permitted Evers

to make gifts, grants or other transfers without consideration either outright or in trust . . . to such person or persons or organizations as [she] shall select; provided, however . . . that [she] shall not make any gifts that are not excluded from gift tax by my federal gift tax annual exclusion . . . .

On 9 June 2003, as trustee of her Trust, Mrs. Walter executed a quitclaim deed ("9 June 2003 Deed") purporting to transfer the Trust's interest in the Subject Property to Mr. Walter.

On 22 August 2003, acting under the POA, Evers executed a warranty deed granting a life estate in the Subject Property to Lawrence Walter, Sr., and the remainder to his son Lawrence Walter, Jr. (the "Lawrence Deed"). The same day, Lawrence Walter Sr. and Jr. executed a promissory note and a purchase money deed of trust ("Deed of Trust") in favor of Mr. Walter in the amount of $50,000.

Mr. Walter died in Florida on 30 August 2003. Though Mr. and Mrs. Walter separated, the two remained married until Mr. Walter's death. Mr. Walter's Will devised the residue of his estate to his four children in equal shares. Mrs. Walter died on 5 February 2005. Her will devised the residue of her estate to the Trust.

During the Florida probate proceeding of Mr. Walter's estate, Plaintiff petitioned the Florida court to partially remove Evers as personal representative of the estate. Plaintiff argued that Evers had a conflict of interest because the estate included the Subject Property, and she had executed the Lawrence Deed acting as Mr. Walter's attorney-in-fact. The trial court appointed an administrator ad litem

for the estate.[2] Plaintiff subsequently moved to remove Evers completely; the Florida trial court denied this request and the Florida appellate court affirmed. Plaintiff testified that no issues concerning the POA or title to the Subject Property were litigated in that proceeding, but the final judgment itself was never entered into evidence.

At the recommendation of the administrator ad litem in the Florida probate proceeding, Lawrence Walter Sr. and Jr. executed a replacement promissory note in the amount of $57,270 ("Replacement Note"). No payment was made on this Replacement Note.

On 26 October 2012, Thomas D. Walter, as trustee of the Trust, executed a deed purporting to transfer the Subject Property to himself personally (the "Thomas Deed").

On 1 March 2013, Lawrence Walter, Sr., Laurie Walter, Lawrence Walter, Jr., and Angel Walter sued Mrs. Walter's Estate, the Trust, Thomas D. Walter, and Thomas's wife, Judith Walter, in Macon County Superior Court. In that suit, Lawrence Walter Sr. and. Jr. claimed title to the Subject Property through the Lawrence Deed. Thomas Walter claimed title to the Subject Property through Mrs. Walter's Will and the Thomas Deed. Plaintiff was not named as a party in this suit and did not seek to intervene.

---

[2] Though the administrator ad litem, Edwin Boyer, was named as a defendant in the present case, there is no indication that he was served or appeared in the case.

The parties executed a settlement agreement to resolve that suit on 9 March 2015. That agreement provided that Lawrence Walter Sr. held a life estate in the Subject Property and Lawrence Walter Jr. was entitled to the remainder. The parties agreed that because the 9 June 2003 Deed was executed under a mutual mistake of fact that the Trust owned the Subject Property at the time, the 9 June 2003 Deed should be reformed to reflect Mrs. Walter herself, not the Trust, as the grantor. The parties further agreed that with the 9 June 2003 Deed so reformed, the Lawrence Deed was effective to pass title. Thomas and Judith Walter agreed to execute a quitclaim deed to the Subject Property to Lawrence Walter Sr., for and during his natural life, with the remainder to Lawrence Walter Jr. The parties agreed that the terms of the agreement would be reflected in a final judgment and the entire agreement was contingent on the Deed of Trust either being satisfied or held unenforceable.

On 16 March 2018, Plaintiff filed the present action against Lawrence Walter Jr. and his former wife, Angel Walter; Lawrence Walter Sr. and his wife, Laurie Walter; Thomas D. Walter individually, as the personal representative of Mrs. Walter's Estate, and as trustee of Mrs. Walter's Trust; Mrs. Walter's Trust; Melanie Walter Day and her husband, Patrick Day; and Barbara Evers. Plaintiff sought a declaration that the Lawrence Deed was void as well as a judgment quieting title in

the Subject Property and holding that he and his sister, Melanie Walter Day, owned the Subject Property in fee simple.

In support of his claim, Plaintiff argued that the Trust's Deed was initially ineffective to pass title because Mr. and Mrs. Walter owned the Subject Property as tenants by the entirety. When Mr. Walter predeceased Mrs. Walter, Mrs. Walter became the sole owner of the property. This, Plaintiff argued, made Mr. Walter's estate the owner of the Subject Property by the Trust's Deed and the 9 June 2003 Deed under a theory of deed by estoppel. Plaintiff further contended that the Lawrence Deed was void because the transfer was a gift which Evers lacked authority to make under the POA. Plaintiff demanded a jury trial.

Defendants responded that Plaintiff (1) failed to bring his action within the statute of limitations; (2) lacked legal standing to assert a claim to the Subject Property; (3) failed to state a claim; (4) prejudicially delayed bringing the suit; (5) had unclean hands; and that (6) the issues raised in the complaint were previously litigated in a Florida lawsuit. Defendants also demanded a jury trial. Defendants agreed that Mr. Walter owned the Subject Property following the execution of the Trust's Deed and the 9 June 2003 Deed, but unlike Plaintiff, contended that a theory of mutual mistake and reformation demanded this outcome. Defendants argued that the statute of limitations barred Plaintiff's claim that the Lawrence Deed was void.

At the close of Plaintiff's evidence, the trial court directed the jury to leave the courtroom while it heard motions. Each of the defendants, except Melanie and Patrick Day, moved for a partial directed verdict. Defendants contended that (1) Plaintiff's challenge to the Lawrence Deed was barred by the statute of limitations, (2) Plaintiff's claims were barred by collateral estoppel, and (3) Plaintiff failed to introduce evidence that the Lawrence Deed was a gift in violation of the POA. Thomas and Judith Walter contended that Plaintiff's estoppel theory was inapplicable to the Trust's Deed and 9 June 2003 Deed and joined Defendants' arguments regarding the statute of limitations. Evers argued that collateral estoppel barred Plaintiff from challenging her authority under the POA to execute the Lawrence Deed.

After hearing arguments by counsel, the trial court granted Defendants' motion for a partial directed verdict. The trial court sent the jury to a lunch break, but asked the parties "to stay because I've got some more discussion." At that time Melanie Walter Day asked the trial court, "Should we leave?" The trial court responded, "That's up to you. You're still in the case if you want to stay. I'll leave it up to you." Plaintiff, Patrick Day, and Melanie Walter Day then left the courtroom and did not return.

The remaining parties waived trial by jury and offered evidence on the issue of reformation. The trial court then entered a final judgment. Based upon the evidence

presented, the trial court found that Mrs. Walter intended to transfer the Subject

Property to Mr. Walter, Mr. Walter intended to accept the deed, and the two were

"under the mistaken belief that [the 9 June 2003 Deed] . . . vested full title to all the

property to [Mr. Walter]." In light of the mutual mistake, the trial court held that

"the [9 June 2003 Deed]. . . should be reformed to reflect [Mrs. Walter] as an

individual and as Trustee of her Trust to [Mr. Walter]," and that the deed as reformed

would relate back to 4 August 2003, the date that it was recorded. The trial court

further held that because Mr. Walter owned the property, and Lawrence Walter Sr.

and Jr. were bona fide purchasers for value, the Lawrence Deed was valid to transfer

ownership of the property. Plaintiff timely gave written notice of appeal on

25 November 2019.

## III. Discussion

### A. *Denial of Plaintiff's Motion for Summary Judgment*

Plaintiff first argues that the trial court erred by denying his motion for

summary judgment.

> The purpose of summary judgment is to bring litigation to an early decision on the merits without the delay and expense of a trial when no material facts are at issue. After there has been a trial, this purpose cannot be served. Improper denial of a motion for summary judgment is not reversible error when the case has proceeded to trial and has been determined on the merits by the trier of the facts, either judge or jury.
>
> The denial of a motion for summary judgment is an interlocutory order and is not appealable. An aggrieved

party may, however, petition for review by way of certiorari. To grant a review of the denial of the summary judgment motion after a final judgment on the merits, however, would mean that a party who prevailed at trial after a complete presentation of evidence by both sides with cross-examination could be deprived of a favorable verdict. This would allow a verdict reached after the presentation of all the evidence to be overcome by a limited forecast of the evidence. In order to avoid such an anomalous result . . . the denial of a motion for summary judgment is not reviewable during appeal from a final judgment rendered in a trial on the merits.

*Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985) (citations omitted).

Plaintiff does not assert that he petitioned for a writ of certiorari after the trial court denied his motion for summary judgment, and the record before us does not so indicate. After denying Plaintiff's motion, the trial court proceeded to hear the remainder of the case and rendered a final judgment on the merits. As such, Plaintiff's appeal from the trial court's denial of his motion for summary judgment is dismissed.

Plaintiff nonetheless contends that the denial of his motion for summary judgment is reviewable because the trial court ruled on Defendants' motion for a directed verdict "without affording Plaintiff an opportunity to reinstate his motion for summary judgment pursuant to" Rule 50(a). Plaintiff also contends that the trial court "did not have the evidence by defendant-appellee required by Rule 50(a)." Because Rule 50(a) contains no such requirements, these arguments are without merit.

### B. Defendants' Motion for Directed Verdict

Plaintiff next argues that the trial court erred by granting Defendants' motion for a directed verdict.

"The standard of review of [a] directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991).

> In determining the sufficiency of the evidence to withstand a motion for a directed verdict, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, giving the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom and resolving contradictions, conflicts, and inconsistencies in the non-movant's favor.

*Turner v. Duke Univ.*, 325 N.C. 152, 158, 381 S.E.2d 706, 710 (1989). "If there is more than a scintilla of evidence supporting each element of the nonmovant's case, the motion for directed verdict should be denied." *Snead v. Holloman,* 101 N.C. App. 462, 464, 400 S.E.2d 91, 92 (1991). In reviewing a trial court's decision on a motion for a directed verdict, this Court will consider only the specific grounds in support of the motion that the movant presented to the trial court. *Leatherwood v. Ehlinger*, 151 N.C. App. 15, 18, 564 S.E.2d 883, 886 (2002).

We note that although the trial court in this case made findings of fact and conclusions of law, these are neither necessary nor appropriate in granting a motion

for directed verdict. *Seven Seventeen HB Charlotte Corp. v. Shrine Bowl of the Carolinas, Inc.*, 182 N.C. App. 128, 133, 641 S.E.2d 711, 714 (2007). Accordingly, we will disregard the trial court's findings and conclusions as they have no legal significance. *Id.*

### 1. Specific Grounds for Directed Verdict

As a threshold matter, we address Plaintiff's contention that Defendants failed to state specific grounds justifying a directed verdict, as required by N.C. Gen. Stat. § 1A-1, Rule 50(a). "A motion for a directed verdict shall state the specific grounds therefor." N.C. Gen. Stat. § 1A-1, Rule 50(a) (2019). "This requirement is mandatory." *Clary v. Alexander Cnty. Bd. of Educ.*, 286 N.C. 525, 528, 212 S.E.2d 160, 162 (1975). Still, to preserve the issue for appellate review, a party must object at trial to the failure of the motion to include specific grounds. *Johnson v. Robert Dunlap & Racing Inc.*, 53 N.C. App. 312, 315, 280 S.E.2d 759, 762 (1981).

During arguments on the motion for a directed verdict, Plaintiff never objected that Defendants had failed to state the specific grounds for the motion. Because Plaintiff failed to raise this objection at trial, he cannot now raise it on appeal. N.C. R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make . . . ."); *Dunlap*, 53 N.C. App. at 315, 280 S.E.2d at 762. Nonetheless, we note that Defendants did

advance three specific grounds in support of their motion for a directed verdict: (1) the statute of limitations had run on Plaintiff's claim that the Lawrence Deed was void, (2) Plaintiff's claims were barred by collateral estoppel, and (3) Plaintiff failed to introduce evidence that the Lawrence Deed was a gift in violation of the POA.

### 2. *Statute of Limitations*

Plaintiff contends that a directed verdict was inappropriate because the statute of limitations had not run on his challenge to the validity of the Lawrence Deed. Specifically, Plaintiff argues that there was no applicable statute of limitations which could run against his claim to quiet title.

"There is no express statute of limitations governing actions to quiet title under N.C. Gen. Stat. [§] 41-10. It thus is necessary to refer to plaintiffs' underlying theory of relief to determine which statute, if any, applies." *Poore v. Swan Quarter Farms, Inc.*, 79 N.C. App. 286, 289, 338 S.E.2d 817, 819 (1986).

Defendants claim that this is essentially an action for ejectment, and as such, is subject to the seven-year statute of limitations found in N.C. Gen. Stat. § 1-38. An action to quiet title is in essence an ejectment action where the plaintiff seeks to recover possession from defendants in possession. *Poore*, 79 N.C. App. at 290, 338 S.E.2d at 819. Plaintiff "made no specific allegation that [D]efendants were in actual possession at the time of the filing of this action," *see id.*, nor did he seek to recover

possession from Defendants in his prayer for relief.  Under these circumstances, we cannot find that Plaintiff's action is in essence one for ejectment.  *Id.*

Instead, whether Evers exceeded her authority under the POA by executing the Lawrence Deed is, in essence, a matter of contract construction.  "Although special rules apply to the fiduciary relationship between a principal and agent, there is, as a general matter, little reason to draw distinctions between powers of attorney and contracts."  *O'Neal v. O'Neal*, 254 N.C. App. 309, 312, 803 S.E.2d 184, 187 (2017).  We therefore "treat the power of attorney at issue in this case the same as any other contract."  *Id.* at 315, 803 S.E.2d at 189.

Plaintiff was permitted, at most, ten years to institute this action.  N.C. Gen. Stat. § 1-56 (2019) (establishing a "catch-all" ten-year statute of limitations for actions not specifically enumerated).  Plaintiff testified that he learned of the Lawrence Deed in September 2003.  *See Pearce v. N.C. State Highway Patrol Voluntary Pledge Comm.*, 310 N.C. 445, 448, 312 S.E.2d 421, 424 (1984) ("In a contract action, the statute of limitations begins to run when the contract has been breached and the cause of action has accrued.").  Plaintiff did not institute this action until 23 July 2015.  Because more than eleven years had passed, Plaintiff's challenge

to the validity of the Lawrence Deed was barred by the statute of limitations. The trial court did not err by granting Defendants' partial directed verdict on this ground.[3]

### C. Bench Trial

Plaintiff next argues that the trial court erred by hearing the remainder of the case in a bench trial after granting Defendants' motion for a directed verdict.[4]

> In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion.

N.C. R. App. P. 10(a)(1).

After the trial court granted Defendants' motion for a directed verdict, Defendants informed the trial court that they intended to present evidence on the remaining issues. At that point, the trial court sent the jury to lunch, but requested that the parties stay because it had matters to discuss. When Melanie Walter Day then asked the trial court, "Should we leave?" the trial court explicitly told her that she remained a party to the case and could stay if she chose to do so. The record

---

[3] Because we conclude that Plaintiff's challenge to the Lawrence Deed was barred by the statute of limitations, we do not reach either Plaintiff's argument that there was sufficient evidence that the Lawrence Deed was an impermissible gift transaction or Defendants' argument that the Florida Probate judgment should be given preclusive effect on the question of the deed's validity.

[4] Plaintiff challenges only the trial court's resolution of the remaining issues via a bench trial; he does not challenge the trial court's continuation of proceedings outside of his presence.

reflects that Plaintiff, his trial counsel, and the Days left the courtroom and never returned.

Once Plaintiff, his trial counsel, the Days, and the jury had left the courtroom, the trial court asked the parties who had stayed in the courtroom which issues remained. Defendants' trial counsel responded, "I would prefer to just go ahead and present evidence . . . and get a ruling on title." When the trial court asked whether the remaining parties "want[ed] to waive jury trial to this issue and . . . go ahead and start," all of the remaining parties agreed to do so. The trial court indicated that it would "make findings of fact and conclusions of law on . . . this portion of the testimony" and the remaining parties presented evidence.

Because Plaintiff left the courtroom, despite being on notice that the trial court intended to proceed, he never presented a timely objection to the trial court's resolution of the remainder of the case via a bench trial. The issue is therefore not preserved for our review, and Plaintiff's argument is dismissed. N.C. R. App. P. 10(a).

## D. Mutual Mistake

Finally, Plaintiff argues that the trial court erred by holding that the 9 June 2003 Deed should be reformed because there was a mutual mistake of fact and law between Mr. and Mrs. Walter.

> In a bench trial in which the superior court sits without a jury, the standard of review is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light

of such facts. Findings of fact by the trial court in a non-jury trial are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable *de novo*.

*Hinnant v. Philips*, 184 N.C. App. 241, 245, 645 S.E.2d 867, 870 (2007) (citation, quotation marks, and ellipsis omitted).

There are "three circumstances under which reformation [is] available as a remedy: (1) mutual mistake of the parties; (2) mistake of one party induced by fraud of the other; and (3) mistake of the draftsman." *Willis v. Willis*, 365 N.C. 454, 457, 722 S.E.2d 505, 507 (2012). "Mutual mistake is a mistake common to all the parties to a written instrument . . . [which] usually relates to a mistake concerning its contents or its legal effect." *Best v. Ford Motor Co.*, 148 N.C. App. 42, 46-47, 557 S.E.2d 163, 166 (2001) (quotation marks and citation omitted), *aff'd per curiam*, 355 N.C. 486, 562 S.E.2d 419 (2002). "The evidence presented to prove mutual mistake must be clear, cogent and convincing, and the question of reformation on that basis is a matter to be determined by the fact finder." *Smith v. First Choice Servs.*, 158 N.C. App. 244, 250, 580 S.E.2d 743, 748 (2003).

### 1. Burden of Persuasion

Plaintiff argues that the trial court committed reversible error by failing to state the burden of persuasion it applied to the claim of mutual mistake. In support of this argument, Plaintiff relies on two cases from this Court, *Durham Hosiery Mill*

*Ltd. P'ship v. Morris*, 217 N.C. App. 590, 720 S.E.2d 426 (2011), and *In re Stowers*, 146 N.C. App. 438, 552 S.E.2d 278 (2001). This reliance is misplaced.

In *Morris*, this Court vacated the trial court's judgment in a summary ejectment action not because the trial court failed to state the burden of persuasion, but because the trial court applied the incorrect burden of persuasion. 217 N.C. App. at 597, 720 S.E.2d at 430. In *In re Stowers*, this Court held that the trial court must affirmatively state the applicable burden of proof in an order terminating parental rights. 146 N.C. App. at 441, 552 S.E.2d at 280. This Court's rationale was that the legislature had required trial courts to affirmatively state the burden of proof in the similar context of delinquency, abuse, neglect, and dependency proceedings. *Id.* Plaintiff has therefore failed to cite any controlling authority for the proposition that the trial court was required to enunciate the burden of persuasion it applied to the claim of mutual mistake, and we find no error in its failure to do so.

### 2. Competency of Evidence of Mutual Mistake

Plaintiff generally complains that the trial court's findings of fact in paragraphs 22 to 27 of its judgment "are not supported by the evidence offered at the trial of this action."[5] Following the bench trial, the trial court found, in pertinent part, as follows:

> 20. ... [Mr. and Mrs. Walter] acquired the [Subject Property] in 1969; that they acquired the property as

---

[5] Paragraph 26 is more accurately described as a conclusion of law, and we review it accordingly.

tenants by the entireties [sic]; that later Mrs. Louise Walter created a trust; and that she attempted to convey an interest to the property by quitclaim deed to her trust.

21.   Subsequent to that, the parties entered into a separation agreement or marital agreement to divide their property, and in that agreement Mrs. Louise Walter was not only contractually bound, but ordered to transfer her interest in the property to Charles Walter, Sr.

22.   In response to that requirement, she executed as the trustee of her trust a deed for the property to Charles Walter . . . and that the evidence indicates a belief at that time that she mistakenly thought that the trust owned the property.

23.   However, due to the tenants by the entirety status [sic], her deed to the trust had no effect and was contrary to the obligations and the rights under the tenants by entirety [sic].

24.   Despite that mistake, she made a quitclaim deed from the trust to Charles Walter, that her intent was to transfer her interest in the property to Charles Walter.

25.   It was also the intent of Charles Walter to accept a deed from her for that interest, and that both Mrs. Louise Walter and Charles Walter, Sr. were under the mistaken belief that [the 9 June 2003 Deed] satisfied the obligation under the trust and vested full title to all the property to Charles Walter, Sr.

27.   . . . Lawrence Joseph Walter, [Sr.] and his son, Lawrence Joseph Walter, Jr. are bona fide purchasers for value and acquired title to the property from Charles Walter superior to what other interest might exist as there are no other purchasers for value in the chain of title.

In light of these findings of fact, the trial court made the following conclusions of law:

> 26.  . . . [A] mutual mistake of fact existed between Charles Walter and Mrs. Louise Walter as well as a mistake of law coupled therewith, and that as a result thereof the [9 June 2003 Deed] signed by Mrs. Louise Walter should be reformed to reflect . . . her as an individual and as Trustee of her Trust to Charles Walter and that the reformed deed should relate back to the original date of recording of the deed, August 4, 2003.
>
> 28.  . . . [T]he transaction from Mrs. Barbara Evers to Lawrence Joseph Walter, Sr. and his son, Lawrence Joseph Walter, Jr. is in all respects valid and that the property is now vested in them pursuant to that deed.

Competent evidence supports the finding that both Mr. and Mrs. Walter were mutually mistaken that the Trust owned the Subject Property and that the 9 June 2003 Deed was effective to transfer title to Mr. Walter. Ample evidence demonstrates that Mrs. Walter intended to transfer the Subject Property to Mr. Walter, and Mr. Walter intended to receive it. Both executed the Marital MSA, which required Mrs. Walter to execute a quitclaim deed so that Mr. Walter would have "sole ownership and possession" of the Subject Property. The Florida trial court subsequently entered an order requiring Mr. and Mrs. Walter to comply with the terms of the Martial MSA and execute the documents required to do so. When Mrs. Walter did not do so, Mr. Walter, through his attorney, sent a letter to Mrs. Walter demanding that she transfer the Subject Property and threatening litigation if she failed to do so. Following the execution of the Marital MSA, the entry of the Florida order, and Mr. Walter's demands, Mrs. Walter executed the 9 June 2003 Deed purporting to transfer the Subject Property from the Trust to Mr. Walter. The attorney who prepared the

9 June 2003 Deed testified that its purpose "was to convey the property described in the legal description to [Mr. Walter]," he did not know at the time that the deed would be ineffective to pass title, and he therefore did not inform Mr. or Mrs. Walter that the deed would be defective.

The trial court's findings of fact also support its conclusion that the deed should be reformed. The trial court found that Mr. and Mrs. Walter were mistaken that the 9 June 2003 would be legally effective to transfer title. Because both parties were mistaken as to the legal effect of the instrument, the trial court did not err by reforming the deed to reflect Mrs. Walter individually as the grantor. *Best*, 148 N.C. App. at 46-47, 557 S.E.2d at 166.

Plaintiff correctly points out that a mistake of law is not grounds for reformation of a deed. *See Mims v. Mims*, 305 N.C. 41, 60, 286 S.E.2d 779, 792 (1982). The trial court did state that "a mutual mistake of fact existed between Charles Walter and Mrs. Louise Walter as well as a mistake of law coupled therewith." In context, however, it is clear that the trial court's reference to a mistake of law was merely superfluous, as the substance of the trial court's judgment focuses on the mistake of fact concerning ownership of the Subject Property and the effectiveness of the 9 June 2003 Deed to pass title.

Because there was competent evidence in support of the trial court's findings of fact, and those findings of fact supported the conclusions of law, we discern no error in the trial court's judgment.

### IV. Conclusion

We dismiss Plaintiff's challenge to the trial court's denial of his motion for summary judgment and the trial court's decision to hear the remainder of the case in a bench trial. Because the statute of limitations barred Plaintiff's challenge to the Lawrence Deed, the trial court did not err in granting Defendants' motion for a directed verdict. Nor did the trial court err by finding that there was a mutual mistake of fact between Mr. and Mrs. Walter which justified reforming the 9 June 2003 Deed. The trial court's judgment is affirmed.

DISMISSED IN PART AND AFFIRMED.

Judges ZACHARY and MURPHY concur.